# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1767
Filed February 11, 2026

————————————

**In the Interest of B.K., Minor Child,**

**A.P., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Linn County,
The Honorable Carrie K. Bryner, Judge.

————————————

**AFFIRMED**

————————————

Alexander S. Momany of Howes Law Firm, PC, Cedar Rapids,
attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant
Attorney General, attorneys for appellee State.

Annette F. Martin, Cedar Rapids, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

A mother appeals the termination of her parental rights to a child born in 2020.[1] She contends the State failed to prove a statutory ground for termination and argues the juvenile court should have applied a permissive exception to termination because of her close relationship with the child. The mother asks this court to reverse the termination or grant her more time to work toward reunification. Following our de novo review of the record, we decline to do so and affirm the juvenile court's ruling.

## I. Background Facts and Proceedings

When she was eight months pregnant with her son, the mother tested positive for cocaine. The Iowa Department of Health and Human Services intervened after the child was born, and a child-in-need-of-assistance case was opened. The mother complied with the department's case plan, and the child remained in her custody until the case was closed in October 2021.

The family came to the department's attention again at the end of 2023 on reports of domestic violence between the parents and illegal substance use. During the investigation that followed, the child's hair tested positive for methamphetamine and marijuana. He was removed from the parents' custody in March 2024 and adjudicated in need of the court's assistance for the second time in his short life.

Over the next eighteen months, the department offered the mother services to address her substance use, mental health, and parenting. But she made little progress. The mother's visitation with the child was inconsistent, as was her participation in drug testing, substance-use treatment, and

---

[1] The father consented to the termination of his parental rights and has not appealed.

mental-health services. Due to this inaction, the juvenile court terminated the mother's parental rights. The mother appeals.

## II. Analysis

Our de novo review of the juvenile court's ruling follows a three-step process to determine whether (1) a statutory ground for termination has been established, (2) termination is in the child's best interests, and (3) any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Because the mother challenges only the statutory ground and permissive-exception findings, we confine our review to those steps before addressing her alternative request for additional time.[2] *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

### A. Statutory Ground

The juvenile court terminated the mother's parental rights on two grounds—those set forth in Iowa Code section 232.116(1)(e) and (f) (2025). Although the mother challenges both grounds, we need only find termination proper on one ground to affirm. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(f).

The mother's challenge to that ground is limited to its final element: whether the State proved by clear and convincing evidence "that at the present time the child cannot be returned to the custody of the child's parents." Iowa Code § 232.116(1)(f)(4); *In re A.S.*, 906 N.W.2d 467, 473

---

[2] We do not address the mother's passing request to place the child in a guardianship because that issue was neither raised in nor ruled upon by the juvenile court. *See In re L.A.*, 20 N.W.3d 529, 533 (Iowa Ct. App. 2025) (finding a parent failed to preserve error on her guardianship request when it was "neither raised nor decided" in juvenile court).

(Iowa 2018) (interpreting the statutory phrase "at the present time" to mean the date of the termination hearing). Relying on her testimony at the first day of the termination hearing,[3] the mother argues that she made a substantial effort "to address the concerns that had been raised by the State, including but not limited to substance abuse, mental health, and relationships." Unfortunately, the record shows otherwise.

At the beginning of the case, the mother and child tested positive for methamphetamine. Yet the mother mostly denied using illegal substances, blaming positive tests on environmental exposure. She made little progress during the rest of the proceedings. As the juvenile court found:

> Both [the father and mother] failed to drug test for the majority of the case and were positive on almost every drug test in which they did participate. [The mother] was unsuccessfully discharged from three different substance abuse treatment programs. While she claimed that she had been sober since her discharge from Heart of Iowa in March 2025, [the mother's] drug testing did not support this claim. She had drug tests positive for methamphetamine as recently as June 2025 and had behavioral indicators of use throughout the entire case.

The court also observed behavioral signs of use at the termination hearing, noting that "the mother spoke extremely rapidly and her testimony was disjointed, non-responsive, and extremely difficult to track at times."

The mother's repeated failures to test, the positive results when she did test, and her denials of methamphetamine use prevented the child's safe return to her custody. *See A.B.*, 815 N.W.2d at 777 (finding a parent's failure to acknowledge illegal drug use despite strong evidence to the contrary supports termination of parental rights). As we have recognized in other cases, a "parent's methamphetamine use, in itself, creates a dangerous

---

[3] The mother did not attend the second day of the hearing.

environment for children." *In re J.P.*, No. 19-1633, 2020 WL 110425, at \*2 (Iowa Ct. App. Jan. 9, 2020); *see also In re C.H.*, No. 23-1079, 2023 WL 7015345, at \*2 (Iowa Ct. App. Oct. 25, 2023) ("The mother's positive test for methamphetamine two months before the termination hearing precluded the children's return to her custody.").

On top of the mother's substance use, she was not steadily employed, had no driver's license, and was living with friends at the time of the termination hearing. *See In re D.M.*, No. 18-0086, 2018 WL 1433104, at \*2 (Iowa Ct. App. Mar. 21, 2018) (collecting cases that found a child cannot be returned to a parent without stable housing or employment). She had also neglected her mental-health needs, testifying that she used methamphetamine not "because I want[ed] to go get high" but "because I wanted to fucking die." And she made statements to department staff about jumping off a bridge and kidnapping the child if her parental rights were terminated. While the mother later characterized these statements as "being an upset mother," they reflect significant and ongoing mental-health concerns that remained largely unaddressed. *See In re D.H.*, No. 18-1552, 2019 WL 156668, at \*2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases that found a parent's failure to seek treatment for mental-health conditions supported termination).

Given the mother's continued instability, we agree with the juvenile court that the child could not be safely returned to her custody at the termination hearing and affirm the termination of her parental rights under Iowa Code section 232.116(1)(f).

## B.    Permissive Exception

The mother next claims that the juvenile court erred in failing to apply the permissive exception to termination in Iowa Code section 232.116(3)(c) based on "the closeness of the parent-child relationship."  *See A.S.*, 906 N.W.2d at 475 (noting the exceptions listed in section 232.116(3) "are permissive, not mandatory" (citation omitted)).  We do not doubt the mother's love for her child.  But that is not enough to prevent termination under this exception.  *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021).

Instead, the mother must prove by "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  Iowa Code § 232.116(3)(c); *see also A.B.*, 956 N.W.2d at 169.  Although she asserts that termination "plainly and patently will cause trauma to the detriment of the child," the record shows the opposite.  The department's case manager testified that the child's therapist had recently requested that the mother's visits be moved to a therapeutic setting because they were becoming "detrimental to the child," whose behaviors were "spiraling backwards."  Like the juvenile court, we decline to apply the permissive exception to termination under section 232.116(3)(c).

## C.    Additional Time

The mother alternatively asks for more time to work toward reunification.  *See* Iowa Code § 232.117(5) (permitting the court to deny termination and enter a permanency order under section 232.104); *see also id.* § 232.104(2)(b) (providing a permanency option of giving a parent an additional six months to work toward reunification).  An extension of time is appropriate only if "the need for removal . . . will no longer exist at the end

of the additional six-month period." *Id.* § 232.104(2)(b). The mother has not listed "the specific factors, conditions, or expected behavioral changes" that will alleviate the need for removal at the end of an extension. *Id.* On this record, we cannot do so either—especially considering the mother's recent positive tests for methamphetamine. *See In re E.W.*, No. 24-0186, 2024 WL 1552597, at *2 (Iowa Ct. App. Apr. 10, 2024) (collecting cases that declined to defer permanency where a parent tested positive for methamphetamine in the months leading up to the termination hearing). We accordingly conclude that an extension of time is unwarranted.

**AFFIRMED.**